IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JESSE M. CASSIDY,

       Plaintiff,

v.                                                                                                            No. CV 15-459 JAP/KBM
                                                                                                        No. CR 13-1860 JAP

UNITED STATES OF AMERICA,

       Defendant,

**MEMORANDUM OPINION AND ORDER**

In Petitioner Jesse Cassidy's REFILED SECTION 2255 MOTION (Doc. No. 25)[1] (Cassidy's § 2255 Motion), Jesse Cassidy argues that his prison sentence was imposed in violation of the Sixth Amendment right to effective representation because his defense attorney – Erlinda Johnson – allegedly failed to inform him of a Government sentencing offer. The United States opposes the motion. *See* UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 (Doc. No. 12) and UNITED STATES' SUPPLEMENTAL BRIEF (Doc. No. 33) (Supplemental Brief).[2] Because the Court finds that Jesse Cassidy has not carried his burden of showing that his attorney's allegedly defective representation prejudiced him, the Court will deny Cassidy's § 2255 Motion.

**I.      Background**

       *a. January 2013-November 2013: Jesse Cassidy's Arrest, Release, and Relapse*

On January 23, 2013, the Santa Fe Police Department arrested Jesse Cassidy for selling methamphetamine. CRIMINAL COMPLAINT (Doc. No. 1, Case No. 13-cr-1860). Roughly two

---

[1] For ease of reference, unless otherwise noted, all citations are to the docket number in Case No. 15-cv-459.
[2] After the January 28, 2016 evidentiary hearing, the Court asked both sides to file supplemental briefs with citations to the transcript. The briefs were due March 18, 2016. The Government timely filed a supplemental brief, but Jesse Cassidy has not submitted anything.

months later, the United States filed distribution charges against him under 21 U.S.C. § 841. *Id.* After waiving his right to grand jury presentment, Jesse Cassidy was released from custody in order to cooperate with the Government. SEALED ORDER SETTING CONDITIONS OF RELEASE (Doc. No. 15, Case No. 13-cr-1860). On July 30, 2013, Jesse Cassidy pled guilty to distribution of methamphetamine. SEALED PLEA AGREEMENT (Doc. No. 29, Case No. 13-cr-1860). Under the terms of the agreement, he remained on release and promised to continue cooperating with the Government. Jesse Cassidy hoped that in exchange for his assistance the Government would help him obtain a reduction in his sentence via a 5K1.1 motion for downward departure. *Id.* at 6; *see also* TRANSCRIPT OF JANUARY 28, 2016 HEARING (Doc. No. 114, Case No. 13-cr-1860) ("Transcript") at 9:14-24.

Unfortunately, this did not come to pass. On October 30, 2013, prior to Jesse Cassidy's sentencing hearing, the Santa Fe Police Department arrested Jesse Cassidy for distributing methamphetamine. MOTION FOR REVOCATION OF RELEASE PENDING SENTENCING (Doc. No. 32, Case No. 13-cr-1860). As a result of this arrest, the Court revoked Jesse Cassidy's conditions of release and remanded him to federal custody. ORDER (Doc. No. 33, Case No. 13-cr-1860). Furthermore, the United States made clear it would not file a 5K1.1 motion for a reduction in Jesse Cassidy's sentence. Transcript at 10:3-7. Based on this information, Jesse Cassidy's court-appointed attorney, Roberto Albertorio, told Jesse Cassidy and his family to expect a sentence in the 8-10 year range, with a mandatory minimum of 60 months. *Id.* at 10:8-15, 11:3-5, 47:14-15.

   b. *February 2014: Jesse Cassidy Hires Erlinda Johnson*

In hopes of obtaining a better sentence, Jesse Cassidy decided to hire Erlinda Johnson, a local defense attorney who he believed had a reputation as a fierce litigator. *Id.* at 11:8-9, 13:9-

13. With this prospect in mind, in or around late January or early February 2014, Richard Cassidy, Jesse's father, contacted Erlinda Johnson about representing Jesse Cassidy during the sentencing phase of the criminal case. *Id.* at 53:4-11, 76:17-25. Richard Cassidy met with Ms. Johnson and told her that he and his wife were upset that Jesse had been permitted to work as an informant without proper supervision. *Id.* at 34:1-11, 76:25-77:1. As a result of this meeting, on February 4, 2014, Erlinda Johnson entered her notice of appearance as Jesse Cassidy's attorney. NOTICE OF ENTRY OF APPEARANCE AND SUBSTITUTION OF COUNSEL (Doc. No. 39, Case No. 13-cv-1860). Eight days later, on February 12, 2014, Ms. Johnson met with Jesse Cassidy for the first time. Transcript at 79:9-14.

Ms. Johnson's and Jesse Cassidy's memories of this first meeting mostly agree. According to Ms. Johnson, during the initial meeting, Jesse Cassidy told her that he had been released without supervision, allowed to continuing using methamphetamine, and thereby "set up for failure." *Id.* at 80:12-16, 81:10-16. Additionally, Ms. Johnson recalls that she and Jesse Cassidy discussed sentencing strategy and that she proposed attempting to negotiate a lower sentence in exchange for Jesse Cassidy agreeing not to litigate claims of informant mishandling against the Government. *Id.* at 81:19-82:2. Jesse Cassidy stated that he wanted a sentence of 60 months. *Id.* at 82:22-83:3. Jesse Cassidy remembers the meeting as a preliminary consultation. *Id.* at 6:6-12,15:7-23. However, Jesse Cassidy agrees that he told Ms. Johnson he felt mistreated by the Government and believed that he was entitled to receive a reduction in his sentence for his assistance. *Id.* at 15:19-23. Moreover, he admits that he expressed a strong preference for a sentence of at most 60 months, DECLARATION OF JESSE CASSIDY (Doc. No. 24 ¶ 18)

3

("Cassidy Affidavit"), [3] and that he "wanted [Ms. Johnson] to negotiate" and "to do whatever she had to do to try to get [him] the right plea offer, to try to get [him] the least amount of sentence." Transcript at 15:2-3, 15:10-11.

### c. February-March 2014: Litigation of the Opposed Discovery Motion

On February 17, 2014, Ms. Johnson filed a motion seeking discovery regarding (1) Jesse Cassidy's cooperation and (2) the Government's handling of Jesse Cassidy during his pre-trial release. *See* DEFENDANT JESSE CASSIDY'S SEALED MOTION TO COMPEL SPECIFIC DISCOVERY (Doc. No. 43, Case No. 13-cr-1860). The Court scheduled this motion for hearing on March 20, 2014. On February 25, 2014, Ms. Johnson met with Jesse Cassidy to prepare for the hearing and to discuss the case. Transcript at 84:20-25, 85:4-8. On the day of the hearing, Ms. Johnson spoke with Jesse Cassidy in the courtroom after the hearing. *Id.* at 19:4-5, 85:12-15. Ms. Johnson and Jesse Cassidy disagree, however, about the content of this conversation. Ms. Johnson claims that (1) she and Jesse discussed the possibility of negotiating a sentence with the Government, and (2) Jesse reiterated his desire to have a sentence as close to 60 months as possible, but (3) Jesse reluctantly authorized Ms. Johnson to negotiate a deal up to 70 months. *Id.* at 85:16-86:8. Jesse Cassidy flatly denies having talked with Ms. Johnson about sentencing negotiations on March 20, 2014. *Id.* at 20:19-21:1.

### d. Email Negotiations

Friday March 21, 2014: The day after the contested discovery hearing, Paul Mysliwiec, the Assistant United States Attorney (AUSA) handling the case, emailed Ms. Johnson and offered Jesse Cassidy a 77-month sentencing deal in exchange for Jesse Cassidy agreeing not to

---

[3] At the January 28, 2016 evidentiary hearing, Jesse Cassidy initially resisted admitting that he expressed a preference for 60 months. Transcript at 11:15-12:5. But when confronted with his affidavit, he eventually agreed that he did express a strong preference for 60 months at the outset of Ms. Johnson's representation. *Id.* at 12:12-18.

4

litigate issues of informant mishandling. Cassidy's Hearing Exhibit No. 1 at 4. Ms. Johnson rejected the offer, by email, saying her client would take 60 months. *Id.*

Ms. Johnson then forwarded this exchange of email messages to Richard Cassidy, Jesse's father. *Id.* By email response, Richard Cassidy asked if Ms. Johnson had spoken with Jesse about the 77-month offer and he suggested counteroffering with 60 months plus 24 months in a drug treatment program. *Id.* at 3. Ms. Johnson responded that she "talked to Jesse yesterday" and that he told her "what he wants is 60 months," so she would "have to talk with Jesse about 60 months plus 24 months in an in-patient drug program." *Id.* Rather than accepting this as a final answer, Richard Cassidy sent Ms. Johnson another email reiterating his belief that a drug treatment program was in Jesse's best interest and suggesting that Ms. Johnson might be able to persuade AUSA Mysliwiec to "get on board" with this plan. *Id.* at 2. Despite her previous statement that she would need to speak with Jesse before making an offer above 60 months, Ms. Johnson capitulated to Richard Cassidy's desires and promised to "reach out to [AUSA Mysliwiec] with the 60 months in BOP plus an additional 24 months in an in-patient treatment facility." *Id.*

Ten minutes later, without speaking with Jesse, Ms. Johnson emailed AUSA Mysliwiec with an offer of 60 months incarceration plus 24 months in an in-patient treatment facility. Government's Hearing Exhibit No. 2 at 2; *see also* AFFIDAVIT OF ERLINDA O. JOHNSON (Doc. No. 12-1) (acknowledging that she did not speak with Jesse Cassidy between March 20, 2014 and April 4, 2014). AUSA Mysliwiec rejected the offer within an hour. Government's Hearing Exhibit No. 2 at 2. Armed with this information, later that Friday afternoon, Ms. Johnson sent Richard Cassidy an email opining that the only way to obtain a better offer from the

5

Government was by threatening to file a complaint against AUSA Mysliwiec. Cassidy's Hearing Exhibit No. 3.[4]

Monday March 24, 2014: On Monday morning, March 24, 2014, Richard Cassidy responded to Ms. Johnson's proposal with the following email:

> Erlinda, I agree with you but maybe now is not the time to play this card.
>
> Couple things:
>
> I talked with Jesse this weekend. He said that seventy months may be acceptable to him (in between sixty and seventy-seven). So do we continue to negotiate with [AUSA Mysliwiec] before we upset him further?
>
> This seems like a long time to me, considering what he's done for them, but it's Jesse's decision ultimately.
>
> Also in order to get under sixty, what would we have to do? Pull the original plea agreement and what would this involve?
>
> If Jesse was to take a sentencing agreement I would consider filing a complaint against [AUSA Mysliwiec], after sentencing and a possible law suit for the way they handled his (un)supervised release.
>
> Where do you think we stand at this point . . .

Cassidy's Hearing Exhibit No. 4 at 2. On Monday afternoon, Ms. Johnson responded (in relevant part):

> I think we need to persuade judge Parker to impose the lowest possible sentence which in this case is 60 months. Unfortunately, before our hearing last week, I had tried to beg [AUSA Mysliwiec] to allow Jesse to withdraw his current plea and allow him to plead to

---

[4] The email reads as follows: "I'm telling you. The only way the US Attorney's office will budge will be if I go to [AUSA Mysliwiec's] supervisors with the information about [AUSA Mysliwiec] trying to inject himself into the attorney-client relationship and the resulting violation of the rules of professional conduct. However, I'd tell them that I'm willing to forego filing a complaint with their office of professional responsibility if they agree to 60 months for Jesse. I have been able to get many favorable results that way from the USAO. I scour my cases for evidence of wrongdoing or problems on their cases and then go to them and force them to give me good deals. Why do you think I've developed the reputation I've developed. I don't back down and I certainly am not afraid of the government. I have great rapport with all the federal judges. In fact, several of them have invited me to apply for a federal magistrate judgeship. They know I advocate fiercely for my clients and don't back down from a good legal fight. If you don't want me to go this route I won't but at this time the government has no incentive to offer Jesse anything. Let me know." Cassidy's Hearing Exhibit No. 3.

> a lower level offense in order to get below the 5 years. He said that was absolutely not an option. We're stuck with the minimum mandatory 60 months. . . .
>
> I think the focus at this time must be presenting a compelling case to judge Parker for 60 months. That's a long time and that should take into account the sales Jesse made to tommy in October. It's more than enough punishment . . .
>
> Please understand that [AUSA Mysliwiec] will not agree to anything less than 77 months. I think that is way too much and we can fare better with Parker . . .

*Id.* at 1. Richard Cassidy replied later in the day asking Ms. Johnson to try "one more angle," proposing a 70-month deal. Cassidy's Hearing Exhibit No. 5 at 1.

<u>Tuesday March 25, 2014:</u> On Tuesday morning, Ms. Johnson answered Richard Cassidy's email and agreed to "reach out . . . one more time to offer 70 months as a compromise." *Id.* As she explained it:

> I will start by suggesting a compromise to 66 months. If that's rejected, then I will counter with 70 months. As you will note from my emails to [AUSA Mysliwiec], his supervisor is copied all the time. It's just unfortunate we ended up with such a difficult prosecutor.
>
> I'll give it one more shot but I really do believe we can do better with Parker.

*Id.* In accordance with this promise, on Tuesday, March 25, 2014, Ms. Johnson emailed AUSA Mysliwiec, saying "my client called and requested that I propose a resolution of his sentencing matter with a proposed sentence of 66 months." Cassidy's Hearing Exhibit No. 6 at 2. AUSA Mysliwiec declined the proposal, but indicated that he would agree to 76 months. *Id.* at 1. Ms. Johnson emailed back asking if he would "split the difference" for an agreed-to sentence of 70 months. Cassidy's Hearing Exhibit No. 7 at 1. AUSA Mysliwiec promptly emailed back, saying no and clarifying that he would not go below 76 months. *Id.* On Tuesday March 25, 2014, Ms. Johnson concluded the email exchanges with a final one-sentence email to AUSA Mysliwiec stating: "Thanks for the quick response." Government's Hearing Exhibit No. 2 at 4.

7

Additionally, Ms. Johnson forwarded the email exchanges to Richard Cassidy. Cassidy's Hearing Exhibit No. 7 at 1.

Critically, Richard Cassidy also claims he spoke with Ms. Johnson on the phone sometime the afternoon of Tuesday March 25, 2014 about the 76-month offer. Transcript at 46:2-25. He maintains that he "emphasized emphatically one more time that [Ms. Johnson] needed to get ahold of Jesse about the 76 months," but that Ms. Johnson responded "That will not be necessary. I've already rejected the offer." *Id.* at 4-11. Ms. Johnson denies having said this or even having any conversation with Richard Cassidy on the telephone on March 25, 2014. *Id.* at 5-15.[5] To the contrary, she attests that she did not immediately decline the 76-month offer. In any event, that evening, March 25, 2014, Richard Cassidy responded to Ms. Johnson's last email regarding the 76-month offer with an email thanking Ms. Johnson and encouraging her to talk with Jesse Cassidy about the negotiations. Government's Hearing Exhibit No. 3 at 1.

### e. *March 26-April 4, 2014: Jesse Cassidy Learns about the 76-month Offer*

Jesse Cassidy first learned of the 76-month offer via a telephone call with his father that occurred sometime between March 26, 2014 and April 4, 2014. Transcript at 24:14-24. According to Jesse Cassidy, during this phone conversation, he (Jesse Cassidy) expressed interest in the offer and told his father that he (Jesse Cassidy) wanted Ms. Johnson to explain the offer to him. *Id.* at 24:1-5, 24:24-25:6, 25:11-12. Ms. Johnson, however, did not visit Jesse Cassidy in the Santa Fe County Detention Center until April 4, 2014. *Id.* at 28:2-6. Jesse Cassidy testified that Ms. Johnson told him about the 76-month offer during this visit, but said she had already declined it.

---

[5] To support this assertion, on April 25, 2016, the United States provided the Court with an authenticated copy of Ms. Johnson's March 12, 2014 through April 11, 2014 cellphone bill. *See* Authenticated Phone Records, Exhibit 1 to SEALED MOTION TO SUPPLEMENT THE RECORD (Doc. No. 34-1). The bill shows one call on March 25, 2014 to a number Ms. Johnson attests belongs to her husband. *Id.*

> She said that - - she said that [AUSA Mysliwiec] didn't like to negotiate, and that they had offered her – offered us 76 months. And I said "Well, by them offering us 76 months, why did they offer us the 76 months?" And she said, "It doesn't matter. It's too late. The government can stick it up their ass," is what she told me.

*Id.* at 7:14-19. Jesse maintains he was distressed by this decision because he was interested in the offer.

Ms. Johnson disavows this account. She claims that she relayed the 76-month offer to Jesse Cassidy during the April 4, 2014 visit and advised Jesse about good-time credit. *Id.* at 97:1-7, 97:23-25. She attests, however, that Jesse decided to reject the offer and proceed with a contested sentencing hearing. *Id.* at 98:1-99:4, 107:24-108:16.

### *f.  May 2014: Jesse Cassidy's Contested Sentencing Hearing*

On April 14, 2014, Ms. Johnson filed a sentencing memorandum and the parties proceeded to a contested sentencing hearing that began on May 2, 2014 and concluded on May 30, 2014. *See* DEFENDANT JESSE CASSIDY'S SEALED SENTENCING MEMORANDUM AND MOTION FOR VARIANCE (Doc. No. 54, Case No. 13-cr-1860); CLERK'S MINUTES (Doc. Nos. 63 & 65, Case No. 13-cr-1860). The Court sentenced Mr. Cassidy to 84 months. *See* JUDGMENT (Doc. No. 67, Case No. 13-cr-1860). Jesse Cassidy did not complain to the Court about Ms. Johnson's alleged misconduct (unilaterally rejecting the 76-month sentencing offer) during or prior to the sentencing hearing.

## II.     Jesse Cassidy's § 2255 Argument

Jesse Cassidy contends that his sentence should be modified because was denied effective assistance of counsel in violation of the Sixth Amendment. He specifically claims that (1) his attorney, Ms. Johnson, failed to properly inform him of the Government's 76-month sentencing offer and (2) he would have accepted this offer if he had been informed of it. The United States agrees that Cassidy's § 2255 Motion is timely-filed and procedurally adequate, but maintains that

9

Jesse Cassidy has not carried his burden of proving (1) that Ms. Johnson unilaterally rejected the 76-month offer, (2) that he would have accepted the offer if informed of it, and (3) that the Court would have approved a 76-month negotiated sentence. In the alternative, the United States asserts that even if Ms. Johnson rejected the plea offer without telling Jesse Cassidy "she was acting within the bounds of effective representation" because Jesse Cassidy had told her he would not accept a sentence of more than 70 months. Supplemental Brief at 9.

### III.     Legal Standard

The law regarding plea bargaining and ineffective assistance of counsel is straightforward. A defendant has a Sixth Amendment right to effective counsel during the plea negotiation process.[6] *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). To establish that this right has been violated, a defendant must show that (1) counsel's performance was unconstitutionally deficient and (2) that he was harmed as a result. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Unconstitutionally deficient representation is measured according to an objective reasonableness standard; a constitutionally significant error has occurred if counsel's performance falls below "prevailing professional norms." *Strickland*, 466 U.S. at 687-88. Examples of deficient performance include failing to communicate a plea offer to a defendant. *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012) ("[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution. . .").

Prejudice arises as a result of deficient performance "when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

---

[6] Here, Jesse Cassidy claims he received deficient representation during negotiations over his sentence. While these were not, strictly speaking, plea negotiations, the parties both assume that Jesse Cassidy had the same rights to effective representation during sentencing negotiations that he would have had during plea negotiations. Moreover, the Court sees no reason a different standard would apply in this context. Thus, the Court, like the parties, will rely on Sixth Amendment plea bargaining case law to guide its analysis.

been different." *Id.* In the context of a claim that an attorney's errors caused a defendant to forgo accepting a plea offer, to prove prejudice, the defendant must show that:

> there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S. Ct. at 1385. The Court is at liberty to address either prong of the analysis – performance or prejudice – first. *Hooks v. Workman*, 689 F.3d 1148, 1186 (10th Cir. 2012).

### IV. Analysis

#### a. *Defective Representation*

Petitioner Jesse Cassidy identifies three closely-related "errors" in Ms. Johnson's representation: (1) she rejected the Government's 77-month, March 21, 2014 offer without speaking to Jesse Cassidy, (2) she unilaterally rejected the Government's 76-month March 25, 2014 offer, and (3) she failed to communicate the conditions, reasoning, and consequences of the offers. Ms. Johnson denies all but the first allegation. She claims that she spoke with Jesse Cassidy on April 4, 2014 and communicated the terms of the 76-month deal. She specifically testified that she talked with Jesse Cassidy about good time credit, but that her explanation did not induce Jesse Cassidy to accept the deal. Ms. Johnson explained that Jesse Cassidy was adamant that he would not accept a sentencing offer of more than 70 months.

If credited, this testimony completely forecloses Jesse Cassidy's Sixth Amendment claim. Even if Ms. Johnson erred by not communicating the 77-month offer (an issue which is open for debate given Ms. Johnson's testimony regarding her March 20, 2014 conversation with Jesse Cassidy), this error was clearly harmless if she subsequently informed Jesse Cassidy of the slightly more favorable 76-month offer and obtained his permission to reject it. On the other

hand, if Jesse Cassidy is telling the truth, the case law and common sense would suggest that Ms. Johnson's representation fell below an objective standard of care. *See Frye*, 132 S. Ct. at 1408 ("[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution. . ."). As a result, whether or not Jesse Cassidy can prevail on the performance prong of his Sixth Amendment claim depends on whose testimony the Court finds more credible. Unfortunately, there are reasons to doubt the testimony of both Jesse Cassidy and Ms. Johnson.

Jesse Cassidy's testimony is obviously self-serving. Moreover, his demeanor was not entirely frank. In his § 2255 affidavit, Jesse Cassidy attested that he "expressed the strong preference for a sentence of at most 60 months" at the outset of Ms. Johnson's representation. Cassidy Affidavit ¶ 18. When asked to confirm this fact at the hearing, however, Jesse resisted. Transcript at 11:15-12:5. Although he eventually relented, rather than taking any responsibility for his role in the decision-making process, he attempted to shift all responsibility for the 60-month preference onto his attorney. Transcript at 11:11-13:8. In a similar vein, Jesse repeatedly denied ever having seen or read the 76-month offer as of January 25, 2016, the day of the evidentiary hearing, Transcript at 8:8-14, 24:14-15, 26: 8-9, 26:13-17, even though, months earlier, he had signed an affidavit, executed October 21, 2015, saying he had recently seen the email containing the offer, Cassidy Affidavit ¶ 23. Moreover, when questioned on cross examination about his belief that Ms. Johnson was reluctant to negotiate, Jesse Cassidy explained that his opinion was based on the emails he had read. He expounded:

> I barely just saw the emails, just right now, some of them right now, but I've never - - that I've never seen before, that her and [AUSA Mysliwiec] had back and forth, that you know - - and I looked at the email, and I'm like wow, [AUSA Mysliwiec] actually did his job and explained why he offered me this, and how come I never saw any of this. I was blown away. I was like, why had I never seen this. He spelled it out right there why he was offering this.

Transcript at 17:1-18:7. This testimony appears to directly contradict Jesse Cassidy's earlier and subsequent insistence that he still had not seen the email offer. *Compare id. with id.* at 8:8-14, 24:14-15, 26: 8-9, 26:13-17.

Jesse Cassidy's father, Richard Cassidy, provided testimony that bolstered Jesse's account. But, this testimony has its own problems. Richard Cassidy testified that he spoke with Ms. Johnson on the phone during the afternoon or early evening of Tuesday, March 25, 2014 and encouraged her to talk with Jesse about the 76-month offer. He claims Ms. Johnson responded that she had already rejected this offer. According to Richard Cassidy, he thought the 76-month offer was "a good offer" and he was shocked and upset to hear Ms. Johnson had rejected it without speaking to his son. Transcript at 47:2-16, 61:22-23. This testimony, however, does not match the email evidence. On Monday March 24, 2014, Richard Cassidy sent Ms. Johnson an email (1) explaining that Jesse was willing to accept 70 months and (2) commenting that 70 months "seems like a long time to me, considering what [Jesse's] done for them, but it's Jesse's decision ultimately." Additionally, on March 25, 2014, after the putative phone conversation, Richard Cassidy sent Ms. Johnson an email saying:

> Thank you so much for your efforts today, Erlinda. Hey we got a month out of him!
>
> You might want to discuss this with Jesse. I know he has a lot of questions but hasn't talked to you in quite awhile.
>
> We will work diligently towards getting you the rest of the material you are going to need by months end. . . .
>
> Please let me know if there is anything else, we can do, to help Jesse's cause including filing a complaint against [AUSA Mysliwiec]. I don't feel like He practices what he preaches.

Government's Hearing Exhibit No. 3 at 1. Nothing in this message suggests that Richard Cassidy thought the 76-month offer was good or reasonable. Nor does this email indicate that Richard

13

Cassidy was in any way upset with Ms. Johnson for allegedly rejecting the 76-month offer. It simply does not accord with Richard Cassidy's account of his March 25, 2014 phone conversation with Ms. Johnson regarding her unilateral rejection of the offer. For all of these reasons, the Court has difficulty accepting either Jesse Cassidy's or Richard Cassidy's testimony at face value.

The problem is that Ms. Johnson's testimony is even harder to square with the email evidence. Ms. Johnson claims that she spoke with Jesse Cassidy on March 20, 2014 and he authorized her to accept a sentencing offer up to 70 months. Transcript at 85:16-86:8. The emails do not support this assertion. By an email to AUSA Mysliwiec on March 21, 2014, Ms. Johnson rejected the Government's 77-month offer saying "We will take our chances with Judge Parker. My client will take 60 months." Cassidy's Hearing Exhibit No. 1 at 4. Ms. Johnson did not respond with a counter-offer between 60 and 70 months in accordance with her alleged conversation with her client. In fact, when Richard Cassidy emailed her on March 21, 2014 and proposed counteroffering 60 months plus 24 months in a drug treatment program, she indicated that she did not have authority to make this offer: "When I talked to Jesse yesterday, he told me that what he wants is 60 months. He wants less but if 60 months is the least, that's what he would like. That's why I told [AUSA Mysliwiec] that Jesse would take 60 months. I would have to talk with Jesse about 60 months plus 24 months in an in-patient drug program." *Id.* at 3. If Jesse Cassidy had authorized Ms. Johnson to negotiate a deal of 70 months or less, the Court would have expected her to mention this fact and to voluntarily take steps to try to secure a deal between 60-70 months. Instead, she simply rejected the Government's 77-month offer, without attempting to work out a sentence between 60 and 70 months, and indicated to Richard Cassidy that she was done negotiating and ready to focus on the contested sentencing hearing. It was not

14

until she was later prompted by Richard Cassidy that she made a counter offer in the 60-70 month range.[7]

As these emails demonstrate, it appears that Ms. Johnson engaged in negotiations with the Government at the direction of Richard Cassidy (Jesse's father) without talking directly to her client. Moreover, in the emails, Ms. Johnson took steps to obscure this information from the prosecuting attorney. When emailing AUSA Mysliwiec with the 60 months plus treatment offer, she stated "I just spoke with Jesse. He asked me to ask if you would agree . . ." Government's Hearing Exhibit No. 2 at 2. At the hearing, Ms. Johnson testified that this was a "typographical error" as she had spoken to Richard, not Jesse Cassidy. Transcript at 114:8-11. But this explanation strains the Court's credulity. On Tuesday March 25, 2014, Ms. Johnson emailed AUSA Mysliwiec saying "[m]y client called and requested that I propose a resolution of his sentencing matter with a proposed sentence of 66 months." *Id.* at 5. Like her previous email, this email misleadingly states that she had spoken with her client.

The Court has difficulty attempting to match the testimony of Jesse Cassidy, Richard Cassidy, and Erlinda Johnson with the documentary evidence. Given these problems, Court will first address the prejudice prong.

    b. *Prejudice*

Deficient performance does not, standing alone, create constitutional concerns. Prejudice must also be shown. To prevail on the prejudice prong of his Sixth Amendment claim, Jesse Cassidy must show that there is a reasonable probability he would have accepted the 76-month

---

[7] On Monday March 24, 2014, Richard Cassidy emailed Ms. Johnson saying that he had talked with Jesse and Jesse was willing to accept 70 months. Cassidy's Hearing Exhibit No. 4 at 2. Ms. Johnson emailed back that the United States would not agree to this deal and they should focus on preparing for a contested hearing. *Id.* at 1. She did not resume negotiations with the Government until after Richard Cassidy directly asked her, later on March 24, 2014, to make a 70-month offer. *See generally* Cassidy's Hearing Exhibit No. 5.

sentencing offer if he had been timely informed of its availability. *Heard v. Addison*, 728 F.3d 1170, 1183 (10th Cir. 2013); *see also Milton v. Miller*, 744 F.3d 660, 672 (10th Cir. 2014) ("Assuming, for purposes of argument, that Milton is truthfully alleging that he was not informed of any pre-preliminary-hearing plea offer, and that he would have accepted such offer had he been timely informed of it, that is clearly sufficient to establish prejudice under the second prong of Strickland."). This showing encompasses both an objective and subjective component. First, proof of prejudice requires a petitioner to satisfy an objective floor showing that his decision to accept a government offer – to change his litigation stance – would have been rational in the absence of counsel's error. *Heard*, 728 F.3d at 1184; *see also Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001) (a defendant's "mere allegation that he would have [accepted a plea] but for his counsel's errors, although necessary, is ultimately insufficient to entitle him to relief").

Second, the petitioner must also show that there is a reasonable probability that he, personally, would have changed his plea but for counsel's errors. *Id.* at 1184 ("the ultimate issue remains whether the defendant would have changed his plea . . ."). This is not an easy showing. As the Tenth Circuit has explained:

> [Courts] remain suspicious of bald, post hoc and unsupported statements that a defendant would have changed his plea absent counsel's errors, and if the defendant can muster no other evidence of how he would have responded if he had received effective assistance of counsel, the inquiry will focus on the objective evidence.

*Id.* Objective factors include "age, the length of the sentence . . . faced under the terms of the plea deal, the prospect of minimizing exposure to other charged counts, and so on." *Heard*, 728 F.3d at 1183.

Here, the terms of the deal were objectively favorable to Jesse Cassidy and a decision to accept the 76-month sentencing deal would surely have been rational. Nevertheless, the Court is

16

not convinced that Jesse Cassidy would have accepted the 76-month offer even if it had been offered to him along with an explanation of its terms. First, Jesse Cassidy has acknowledged that he retained a very strong preference for a 60-month sentence at the outset of Ms. Johnson's representation, less than two months before the 76-month offer was made. Jesse Cassidy has never satisfactorily explained why this preference changed.[8] Second, Jesse Cassidy has admitted that he felt wronged by the United States and believed he deserved to be rewarded for his assistance. Third, when Jesse Cassidy first learned of the 76-month offer from his father via a phone call sometime between March 25, 2014 and April 4, 2014, he did not immediately and affirmatively direct his father to relay his desire to accept the offer to Ms. Johnson. According to his testimony, he told his father the offer looked good, but also said that he needed to talk with Ms. Johnson and have her explain why the Government was making this offer. Transcript at 24:1-5, 24:24-25:6, 25:11-12. As a whole, Jesse Cassidy's testimony suggests that he was hesitant to accept the 76-month offer without further explanation. This hesitance remains apparent in his subsequent behavior. While he testified that he would have taken the offer if it was open and that his attorney refused to see if the offer was still available, Transcript at 30:1-17, Jesse Cassidy did not complain to the Court about this claimed egregious behavior either prior to or during the sentencing procedures.

In summary, courts have long been "suspicious of bald, post hoc" statements that a petitioner would have accepted (or rejected) an offer absent error of counsel. *See Heard*, 728 F.3d at 1184. For the reasons listed above, the Court doubts Jesse Cassidy's assertion that he

---

[8] At the January 28, 2016 evidentiary hearing, Jesse Cassidy attempted to cast blame for his 60-month preference on Ms. Johnson. Transcript at 11:11-13:8. The Court, however, finds the source of Jesse Cassidy's preference to be largely immaterial. Jesse Cassidy does not bring a Sixth Amendment challenge to his sentence based on an alleged promise by Ms. Johnson to obtain a 60-month sentence at a contested hearing. It is clear that any such claim would stand on very weak legs. When he pled guilty, Jesse Cassidy acknowledged that his sentence would be determined by the Court and that he could be sentenced to any amount between 5-40 years. Moreover, it is clear from Jesse's testimony that he was well aware he might receive a longer sentence at a contested sentencing hearing. *Id.* at 25:19-20, 26:3-4.

would have taken the offer if he had been told it was still available. Jesse Cassidy did not strike the Court has a forthright witness. Nor is there any objective evidence to support his claim that he would have taken the 76-month offer if informed of it. Consequently, the Court finds Jesse Cassidy has not carried his burden of proof of showing that he was prejudiced by his counsel's alleged errors.

  IT IS THEREFORE ORDERED that REFILED SECTION 2255 MOTION (Doc. No. 25) is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE